**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

ALFONSO ALLAN BROOKS,
             *Defendant-Appellant.*

No. 05-30261

D.C. No.
CR-03-00311-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
April 13, 2007—Seattle, Washington

Filed November 29, 2007

Before: Alex Kozinski and Raymond C. Fisher,
Circuit Judges, and Andrew J. Guilford,* District Judge.

Opinion by Judge Guilford

---

*The Honorable Andrew J. Guilford, United States District Judge for the Central District of California, sitting by designation.

15379

## COUNSEL

Lenell Nussbaum, Seattle, Washington, for the defendant-appellant.

Todd L. Greenberg (argued) and Sarah Y. Vogel, Assistant United States Attorneys, Seattle, Washington, for the plaintiff-appellee.

## OPINION

GUILFORD, District Judge:

Appellant Alfonso Allan Brooks ("Brooks") appeals his drug-related convictions, challenging aspects of the jury instructions, the indictment, the sentencing, and testimony he

claims was reversible vouching. We affirm, although we do not condone the vouching.

## BACKGROUND

The drug investigation in this case began in New York and moved to Seattle, where the Drug Enforcement Administration ("DEA") obtained a wiretap and intercepted Brooks's calls from April 4, 2003 through August 1, 2003. Two teams of agents in Seattle also conducted full-time surveillance of Brooks and his associates. The coordinated efforts revealed that Brooks and others were obtaining, distributing, and exchanging illegal drugs.

Brooks was arrested on August 4, 2003. The final indictment charged him with multiple counts of possessing drugs and firearms. During a long trial lasting most of June 2004, the government presented extensive testimony, wiretap evidence, and seized items, including drugs and a TEC DC9 9 millimeter handgun. During closing argument, defense counsel conceded "that the proper verdicts in this case on behalf of Mr. Brooks would be to find him guilty of [Counts] 15, 17, and 18." The jury found Brooks guilty of all counts.

Brooks was sentenced to imprisonment of 20 years on the drug counts—the mandatory minimum—and five years on the firearm count, with 10 years of supervised release.

We review in turn the four areas of concern raised on appeal.

## ANALYSIS

### 1. JURY INSTRUCTION FOR COUNT 18

Brooks challenges a jury instruction for Count 18, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). First, Brooks argues the

instruction improperly failed to define the crucial phrase "in furtherance of." Second, Brooks claims that the instruction improperly included "aiding and abetting" language. Third, Brooks asserts that the instruction permitted the jury to find that he possessed the gun in furtherance of crimes he committed far from where he kept the gun.

The instruction stated:

Defendant Brooks is charged in Count 18 of the Indictment with Possession of a Firearm in Furtherance of a Drug Trafficking Crime on or about August 4, 2003, at 17910 SE 259th Street, Covington, Washington, in violation of Section 924(c) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant committed a drug trafficking crime, specifically one of the following, as alleged in the Indictment: Count 1 — Conspiracy to Distribute Controlled Substances; Count 15 — Possession with Intent to Distribute Cocaine on or about August 4, 2003; Count 16 — Possession with Intent to Distribute Methamphetamine on or about August 4, 2003; or Count 17 — Possession with Intent to Distribute MDMA (ecstacy) on or about August 4, 2003, with all of you agreeing as to the particular crime; and

Second, on or about August 4, 2003, the defendant knowingly possessed a TEC DC9 9 mm caliber semi-automatic pistol, or aided and abetted the possession of the pistol; and

Third, the defendant possessed the TEC DC9 9 mm caliber semi-automatic pistol, or aided and abet-

ted its possession, *in furtherance of* the drug trafficking crime.

(Emphasis added)

Brooks did not object to the instruction at trial, so we review for plain error. *United States v. Steward*, 16 F.3d 317, 320 (9th Cir. 1994). In a plain error case involving a jury instruction, "we correct an error . . . only where the error (1) is plain, (2) affects substantial rights, and (3) 'seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Tirouda*, 394 F.3d 683, 688 (9th Cir. 2005) (quoting *United States v. Jordan*, 256 F.2d 922, 926 (9th Cir. 2001)). Here, the instruction is plainly erroneous if "there is a significant possibility the jury might have acquitted if it had considered the matter." *Steward*, 16 F.3d at 320. This instruction was not plain error.

**[1]** All of Brooks's arguments on the Count 18 instruction are foreclosed because his counsel twice conceded during closing argument that Brooks should be found guilty of Count 18. Specifically, defense counsel said that "the proper verdicts in this case on behalf of Mr. Brooks would be to find him guilty of [Counts] 15, 17, and 18. . . . [T]hese are the counts that I believe the government has proven, and those are the counts I believe you should find him guilty of." Defense counsel also said, "the only weapon [count] that you should find him guilty of is count 18." With these concessions, there is no "significant possibility the jury might have acquitted" on Count 18, and attacks concerning Count 18 cannot succeed. *Steward*, 16 F.3d at 320.

## 2. INDICTMENT

For the first time on appeal, Brooks argues that several counts of the indictment were multiplicitous. Because Brooks did not raise this indictment issue before trial, he has waived his right to appeal it.

Under Rule 12(b)(3) and 12(e) of the Federal Rules of Criminal Procedure a defendant waives any "defect in the indictment" not raised "before trial." We have recognized that claims of multiplicity are subject to Rule 12(b)(3). *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997) (concerning an earlier version of Rule 12(b)). Brooks has waived any claim that the indictment is multiplicitous.

## 3.  SENTENCE ENHANCEMENT

Brooks challenges his sentence enhancement, arguing that his prior conviction was not a felony drug offense, which is necessary for the enhancement under 21 U.S.C. § 841(b). Brooks also argues that the Sixth Amendment required the government to prove his prior conviction to a jury. Both arguments fail.

**[2]** The statutory procedure for imposing the enhancement in this case provides that "[i]f the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." 21 U.S.C. § 851(c)(1). Absent good cause, any challenge not raised by response to the information is waived. *Id.* § 851(c)(2).

Here, the government filed an Enhanced Penalty Information under 21 U.S.C. § 851 and sought a mandatory minimum of 20 years imprisonment under 21 U.S.C. § 841(b) because of Brooks's prior Arizona felony drug offense. Brooks filed a response denying every allegation of this information, but not specifically challenging the validity or nature of his conviction.

**[3]** Elsewhere, however, Brooks conceded the fact of his prior conviction. In his Motion to Dismiss the Enhanced Penalty Information, Brooks's counsel stated that Brooks had pleaded guilty on drug importation charges. He further stated that "[t]he court sentenced him to 3.5 years . . . . The offense

is a class 3 felony under Arizona law." Brooks's counsel confirmed this at the sentencing hearing, where he admitted that the prior drug conviction had a term of imprisonment of three and one half years, and where the district court immediately concluded that "[i]t was treated as a felony by the state of Arizona." It was not error for the court to apply the sentence enhancement because Brooks failed to fully object, and because Brooks's counsel stated more than once that Brooks had been convicted on a drug count with a sentence of over one year. *See* 21 U.S.C. § 802(44) (definition of "felony drug offense").

**[4]** Brooks cannot successfully challenge the sentence enhancement.

## 4. VOUCHING

Brooks's final argument is that there was improper vouching requiring reversal. First, Brooks argues there was vouching in the direct examination of three witnesses. Second, Brooks argues that the redirect examination of one of these witnesses implied that the court and others had made conclusions about the witness's veracity. Third, Brooks argues there was vouching in the government's evidence about the wiretap authorization process. We agree with Brooks that the government engaged in improper vouching. Nevertheless, we affirm because the error did not affect Brooks's substantial rights. Fed. R. Crim. P. 52(b).

**[5]** "Improper vouching typically occurs in two situations: (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness's testimony." *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002). Because Brooks failed to object to the vouching, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Molina*, 934 F.2d 1440, 1444 (9th Cir. 1991). In

vouching cases under the plain error standard, "[w]e reverse only if, viewing the error in the context of the entire record, the impropriety 'seriously affects the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice.' " *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (quoting *Molina*, 934 F.2d at 1446). After first examining the claims of vouching, we then determine if there is plain error requiring reversal.

First, Brooks claims there was vouching in the direct examination of cooperating witnesses. One witness testified that his plea agreement required him "to say the truth about everything I know and make sure everything is the truth because if they find out I'm lying, they will rip up the agreement and I'll end up with 25 to life." Another witness testified that under his plea agreement, any false testimony by him would greatly increase his sentence. A third witness testified that if he "gave truthful testimony against Alfonso Brooks in this case," then he "may receive a downward departure for time off." Witnesses testified that they were speaking the truth before the jury and were living up to the terms of their plea agreements.

These statements are mild forms of vouching because they suggest that the witness, "who might otherwise seem unreliable, has been compelled by the prosecutor's threats and the government's promises to reveal the bare truth." *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988). Such references imply that "the prosecutor can verify the witness's testimony and thereby enforce the truthfulness condition of its plea agreement." *Id.*

**[6]** Second, Brooks claims there was vouching in the redirect examination of the cooperating witness Juan Soriano ("Soriano") concerning Soriano's earlier plea agreement that greatly reduced his sentence. Soriano agreed with the prosecutor's statement that under his plea agreement he had to "give truthful testimony and that [he] could not lie in [his] tes-

timony." Soriano also agreed with the prosecutor's suggestion that the prosecutors and the judge in other trials believed he testified truthfully, and that if he had "lied, given false testimony at those trials," he would not have been given a reduction in his sentence. When Soriano was asked about the Brooks trial, he testified that if he gave false testimony, the government "[would] break up my agreement and they [would] end up giving me 25 to life."

**[7]** It is generally permissible to address an issue on redirect examination that has been raised in cross-examination, *United States. v. Sarkisian*, 197 F.3d 966, 989 (9th Cir. 1999), and here, Soriano's credibility had been attacked on cross. Still, this questioning was improper vouching. The testimony left "the implication that the court, as well as law enforcement, can, has, and will monitor the [witness's] truthfulness." *United States v. Ortiz*, 362 F.3d 1274, 1279 (9th Cir. 2004). The testimony about previous courts monitoring Soriano's statements and making positive assessments improperly bolstered Soriano's credibility. "Whether the witnesses have testified truthfully, of course, is entirely for the jury to determine; it is improper to communicate that a credibility determination has been made by the AUSA, law enforcement agents, or the court, or that the government knows whether the witness is being truthful and stands behind the veracity of the witness's testimony." *Id*. The government candidly concedes that its questioning "may constitute error." It is vouching.

**[8]** Third, Brooks claims there was vouching in the extensive testimony about the process of obtaining wiretap authorization. This wiretap testimony referenced approval by DEA authorities, the United States Attorney's Office, and state and federal judges. It implied that the government and courts were monitoring Brooks's conduct and had determined he was guilty.

In *United States v. Cunningham*, 462 F.3d 708 (7th Cir. 2006), the Seventh Circuit examined the propriety of extensive testimony on the wiretap authorization process.

> The obvious purpose of the evidence was to show the jury there were several senior government attorneys and agents who all believed there was probable cause that the defendants were involved in a drug conspiracy, and, indirectly, that they all believed, in their professional judgment, the defendants were in fact committing drug-related crimes.

*Id.* at 713. The court held that "[t]he government witness was improperly vouching for how good the evidence was," and that the procedures detailed extensively by the witness, "served only to bolster the credibility of the unnamed attorneys' and agents' respective determinations." *Id.*

**[9]** The testimony here encouraged the jury to draw inferences against Brooks. By discussing at length the process involved in obtaining a wiretap authorization, the government improperly bolstered its case. As in *Cunningham*, such testimony indicated that many government attorneys and a federal judge had decided that Brooks was guilty. This is vouching.

The government's argument that such testimony was permissible to lay a foundation for the wiretap evidence fails. Although the parties did not stipulate to the admissibility of the wiretap evidence, the authenticity of the recordings could have been adequately established without such extensive detail. As in *Cunningham*, the "government does not have to prove that the electronic recording of the conversation was properly authorized by a judge to establish the recording was 'true, accurate and authentic.' " *Cunningham*, 462 F.3d at 713.

**[10]** Having found different forms of vouching ranging from mild to more serious, we now determine whether the

vouching requires reversal. We have not adopted a bright-line rule about when vouching requires reversal. Instead, "[t]o ascertain whether the . . . vouching amounts to plain error, the court balances the seriousness of the vouching against the effectiveness of any curative instruction and the closeness of the case." *United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir. 1999).

**[11]** Here, the prejudice from vouching was reduced by curative instructions wisely given twice by the district court. At the trial's beginning, the district court instructed the jury to make careful credibility assessments of witnesses who had "pleaded guilty to crimes arising out of the same events for which the defendants are on trial," and to "consider those witnesses' testimony with great caution, giving it the weight that you feel it deserves." A similar instruction was given at the end of trial.

**[12]** The strongest factor in concluding there is no plain error here is that this was not a close case. The strength of the government's case is reflected in the fact that the defense conceded liability on numerous counts. We have upheld convictions in vouching cases where there is substantial independent evidence of guilt. *See Daas*, 198 F.3d at 1179 (no plain error where there was "other 'non-vouched' evidence" of criminal intent); *United States v. Lew*, 875 F.2d 219, 223-24 (9th Cir. 1989) (no plain error where there was substantial independent evidence against the defendant). In a case involving wiretaps, we found vouching errors were harmless, noting "[t]he tapes themselves, as well as the physical evidence, created a strong case that the wiretap evidence referred to cocaine transactions." *Hermanek*, 289 F.3d at 1102.

Reviewing specifically the vouching that occurred in direct examination, we conclude there was no plain error. The plea agreement references are only mild forms of vouching. And because the credibility of these witnesses would almost certainly have been challenged during cross-examination, there

was justification to bolster credibility. In fact, defense counsel did cross-examine these witnesses about the terms of their plea agreements and their motivation for cooperating with the government. On *cross-examination*, Soriano agreed with defense counsel's statement that, depending on his cooperation, he could receive a sentence allowing him "to walk out the jailhouse door." With this interrogation, defense counsel attacked Soriano's credibility by suggesting his testimony had been bought with sentencing concessions. Other cooperating witnesses had similar cross-examinations.

**[13]** With the curative instructions and the strength of the government's case, there is no plain error in the direct examinations.

**[14]** Soriano's redirect examination and the improper examination on the wiretap authorization process present more serious issues. Although the curative instructions reduced the overall impact of the vouching that occurred, they were specifically directed to testimony from witnesses who had pleaded guilty. They did not address the implication, made by some of the vouching, that the government and courts were monitoring Brooks's conduct and had determined he was guilty. Still, the government's case was so strong that the improper redirect and wiretap examinations do not require reversal, even without perfectly worded curative instructions applicable to all the vouching. At trial, defense conceded liability on numerous counts. In the context of the entire record we have reviewed, the redirect and wiretap examinations did not seriously affect the fairness, integrity, or public reputation of judicial proceedings, and a miscarriage of justice does not result from failing to reverse. *Necoechea*, 986 F.2d at 1276.

**[15]** Finally, we must consider "whether the . . . instances of vouching cumulatively require reversal." *Id.* at 1282. Our conclusion does not change. Ultimately, the vouching did not undermine the strong evidence presented against Brooks in a lengthy trial, which began and ended with curative instruc-

tions. Viewing the vouching cumulatively in the context of the entire trial, the fairness, integrity, and public reputation of judicial proceedings were not seriously affected, and failing to reverse would not amount to a miscarriage of justice. *Necoechea*, 986 F.2d at 1276. Thus, the seriousness of the vouching did not outweigh all other considerations supporting the verdict.

The vouching here was within the broad bounds of the plain error standard, but pushed hard against those bounds and threatened the integrity of the verdict. It is not a model for future trials.

## *CONCLUSION*

The judgment is **AFFIRMED.**