NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 22 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES, | No. 19-10251 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-08107-SPL-1 |
| v. | |
| MURPHY ALEX BEGAY, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Steven P. Logan, District Judge, Presiding

Argued and Submitted May 13, 2022
Pasadena, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and AMON,** District
Judge.

Concurrence by Judge FRIEDLAND, joined by Judge WATFORD

Murphy Alex Begay appeals from the denial of his motion for a new trial and

his motion for acquittal as a matter of law, arguing that the district court's failure to

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Carol Bagley Amon, United States District Judge for
the Eastern District of New York, sitting by designation.

suppress his pretrial statements, its decision to exclude portions of his interview with the FBI, and statements made by the government in closing infected his trial with error. We affirm.

1. The district court did not err by denying Begay's motion to suppress. "Whether a person is 'in custody' for purposes of *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] is a mixed question of law and fact that is reviewed de novo." *United States v. Cazares*, 788 F.3d 956, 979 (9th Cir. 2015). "A defendant is in custody if," based on the totality of the circumstances, "a 'reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.'" *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981)). Five non-dispositive factors relevant to the custody determination are "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* (quoting *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002)).

Considering the totality of the circumstances, the district court's finding that Begay was not in custody when he made the statements he sought to suppress was well supported. Before Begay entered the agents' car, one agent "informed him that he was not under arrest and that [they] would not be driving anywhere in [the]

2

vehicle." Once they entered the car, the agent confirmed: "you're not under arrest," "[y]ou're not in my custody," the "[d]oors are unlocked," and "[y]ou can—free to leave whenever you want." Begay indicated he understood. Moreover, the interview itself was conducted by agents in plainclothes who did not display their firearms, lasted only 36 minutes, and took place in an unlocked car with Begay's family nearby. Additionally, a review of the recording supports the district court's finding that the tone of the interview was never "aggressive" or "coercive."

At oral argument, counsel for Begay conceded that if Begay were not in custody, *Miranda* would not apply and statements made after Begay expressed a desire not to talk would not be subject to suppression under *Miranda*. *See Montejo v. Louisiana*, 556 U.S. 778, 795 (2009) ("[T]he *Miranda-Edwards* regime . . . applies only in the context of custodial interrogation."). Begay also challenges the voluntariness of his statements, which is an inquiry independent of the applicability of the *Miranda* decision. *See Beckwith v. United States*, 425 U.S. 341, 347-48 (1976). Although Begay's statements that he did not wish to speak to the agents bear on that inquiry, we conclude based upon the facts outlined above and considering the totality of the circumstances that his statements were voluntary.

2. Begay argues that the district court abused its discretion by denying his motion to admit the entirety of his statement to the FBI under Federal Rule of Evidence 106. We review for harmless error and will reverse only if it is more

probable than not that the error materially affected the verdict. *See United States v. Lopez*, 4 F.4th 706, 714, 717-18 (9th Cir. 2021) (applying harmless error standard to Rule 106 challenge).

Assuming without deciding that the trial court's failure to admit the full recording was an abuse of discretion, we find that any error was harmless. "It is well established that the strength of the Government's case can render trial errors harmless by reducing the likelihood that tainted evidence impacted the verdict." *Id.* at 718. There was substantial evidence of Begay's guilt. The victim testified to knowing Begay prior to the charged incident, testified in detail about the incident, and identified Begay as the perpetrator by both his full name and his nickname "Smurf," and through an in-court identification. Begay's presence at the scene of the crime was corroborated by two witnesses, and two other witnesses testified to the victim's contemporaneous distress. The jury also heard recordings of Begay's phone calls from jail in which he seemingly admitted to having gotten drunk with the victim's mother and having returned to her house.

Moreover, on taking the stand, Begay was effectively cross-examined on his claim that he had very limited English language proficiency and on his denial of his use of the nickname "Smurf." The jury could have easily inferred that he lied about these matters, as well as his claim that he had never been to the victim's mother's

house.[1]  "[D]isbelief by the jury of defendant's testimony would here present some damaging affirmative inferences."  *United States v. Smith*, 427 F.2d 1164, 1164 (9th Cir. 1970) (per curiam); *see also United States v. Reyes*, 660 F.3d 454, 467 (9th Cir. 2011) (citing *United States v. Perkins*, 937 F.2d 1397, 1402 (9th Cir. 1991), for the proposition that "false exculpatory statements can be considered as evidence of consciousness of guilt").

Admission of the full recording would not have undercut the strength of this evidence.  Moreover, Begay's decision to testify at least partially "served to mitigate any prejudice resulting from the improper admission of the misleading excerpts." *Lopez*, 4 F.4th at 718.  Although Begay was not able to testify to all the details of his interview, he was able to dispute that his statements to the FBI agents were confessional.  Given this record, it is more probable than not that the error did not materially affect the verdict.

3.  The trial court did not err in denying Begay's motion for acquittal.  Begay admits that his motion for acquittal "was admittedly weak and predicated upon the wrongful admission of the interview excerpts."  As noted, Begay was not in custody and participated in the interview voluntarily, so the interview excerpts were not wrongfully admitted.  Moreover, even without the interview excerpts, there was

---

[1] Notably, the sentencing judge found that Begay "made false statements [while] testifying about material issues" when he gave the aforementioned testimony, observing that he "just flat out lied while he was on the stand."

5

other significant evidence of Begay's guilt, as discussed above. Accordingly, "viewing the evidence in the light most favorable to the prosecution, a[] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009) (quoting *United States v. Dearing*, 504 F.3d 897, 900 (9th Cir. 2007)).

4. Begay alleges that the government engaged in impermissible vouching during its closing argument. Because Begay failed to object to the alleged vouching, we apply the plain error standard. *United States v. Brooks*, 508 F.3d 1205, 1209 (9th Cir. 2007). Here, the government did not commit plain error. "Improper vouching typically occurs in two situations: (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness's testimony." *Id.* (quoting *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002)). The government's discussion of the victim's testimony did not rely on the government's prestige or indicate the existence of information not presented to the jury. Instead, the government argued only that the testimony that the jury had heard bolstered the victim's credibility. That is a permissible argument where the defense has challenged a witness's credibility. *See United States v. Alcantara-Castillo*, 788 F.3d 1186, 1195 (9th Cir. 2015) (finding no improper vouching where "the prosecutor appears to be employing the language of

6

the district court's jury instruction as to credibility to argue that the jury should believe [a witness] based upon inferences it could draw from the evidence").

Additionally, it was permissible for the government to argue that Begay's response "[u]m, yes" to the agent's question "[y]ou put your penis in her vagina" was an admission. Any error in the prosecutor's statement that the jury "should believe" Begay's admission "[b]ecause that's true" is not so apparent that it amounts to plain error.

5. Because we find no error in the district court's failure to suppress Begay's statements to the FBI or the government's closing statement and find that any evidentiary error was harmless, we conclude that the court did not abuse its discretion when it denied Begay's motion for a new trial. Begay waived any additional arguments referenced only obliquely in his summary of argument section because he did not "specifically and distinctly argue the issue[s] in his . . . opening brief." *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005).

**AFFIRMED**.

FILED

JUN 22 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*USA v. Murphy Begay*, No. 19-10251

Judge FRIEDLAND, with whom Judge WATFORD joins, concurring:

I concur because I agree that the trial court's failure to admit the full interview was harmless given the strength of the Government's case. But I write separately to emphasize that I believe that admitting only the Government's excerpts from the interview was an abuse of discretion, and to urge the Government not to repeat the tactic of offering misleading partial excerpts in future cases.

Under the Rule of Completeness, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Portions of a document or recording are admissible under Rule 106 notwithstanding the bar on hearsay evidence when they are offered "'to correct a misleading impression' in the edited statement" introduced by an opposing party. *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (quoting *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996)). In an interrogation context, we have held that Rule 106 allows the admission of additional portions of a defendant's statement when the prosecution offers a redacted version that "distorts the meaning of the statement," "excludes information substantially exculpatory of the declarant," or "excludes

1

portions of a statement that are . . . explanatory of [or] relevant to the admitted passages." *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) (alterations in original) (quotation marks omitted).

Here, the district court abused its discretion by categorically excluding the remaining portions of the interview as inadmissible hearsay. The Government's edited excerpts did not accurately present the content of Begay's statements during the interview. Rather, the excerpts risked misleading the jury by making it seem as though Begay clearly confessed to having sex with an underaged girl and showed remorse. The full interview conveys a very different impression. The excluded portions of the interview suggest that Begay may not have been admitting to partaking in a sexual incident at all. Begay seems to mumble, respond affirmatively simply to indicate that he is listening, and repeat the officers' language as he is thinking. And rather than clearly confessing, he always returns to the same bottom line: *if it happened*, I am sorry. Because excluded "portions contained statements that bore directly on the meaning of the excerpts presented by the Government at trial . . . [b]y ruling that the remainder of the [interview] would be inadmissible hearsay if proffered by the defense, the district court denied [Begay] the opportunity to proffer [interview portions] that would serve to correct the misleading impression created by the Government's excerpts." *United States v.*

2

*Lopez*, 4 F.4th 706, 717 (9th Cir. 2021), *petition for cert. docketed*, No. 21-7624 (U.S. Apr. 14, 2022).

The district court and Government relied on *Ortega* in concluding that the remaining portions of the interview, if offered by Begay, would constitute inadmissible hearsay. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). That conclusion, however, misconstrues our dicta in *Ortega*. When we stated that "[e]ven if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay," *id.*, we were explaining only that—under the facts of that case—the statements would not have corrected a distortion created by the government.

"[W]hile [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935). I urge the Government to heed its duty that "justice shall be done," *id.*, and to err on the side of completeness when it introduces defendants' statements at trial.

3