**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

HUMBERTO IRIBE,
            *Defendant-Appellant.*

No. 07-50432

D.C. No.
CR-00-01242-JM-03

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
February 4, 2009—Pasadena, California

Filed May 6, 2009

Before: Harry Pregerson, Susan P. Graber, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Frederick M. Carroll and Marc X. Carlos, Bardsley & Carlos, LLP, San Diego, California, for the defendant-appellant.

Jason A. Forge, Assistant United States Attorney, Appellate Section, Criminal Division, San Diego, California, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

Defendant Humberto Iribe entered a conditional guilty plea, during trial, to conspiracy to kidnap and attempt to kidnap Richard Post, in violation of 18 U.S.C. §§ 371 and 1201(d). He reserved the right to appeal with respect to an alleged violation of the doctrine of specialty, which prohibits a requesting nation from prosecuting an extradited individual for any offense other than the one for which the surrendering state agreed to extradite, as well as with respect to the lawfulness of his convictions for both conspiracy to kidnap and attempt to kidnap the same person, whom he actually did kidnap and kill. We hold that there was no violation of the doctrine of specialty, because Mexico agreed to Defendant's extradition for these two crimes, and that the district court properly convicted Defendant of both conspiracy and attempt to kidnap Post. Therefore, we affirm Defendant's convictions.

## FACTUAL AND PROCEDURAL HISTORY

In August 1998, Defendant met with Kimberly Bailey and John Krueger in San Diego, California, to discuss the kidnapping of Richard Post. Defendant and the others agreed to the following: Bailey would trick Post into accompanying her to Mexico, where she would take him to a designated location. Defendant would arrange for Post to be abducted and taken to another location in Tijuana, Mexico. Defendant and others acting at his direction would threaten, beat, and torture Post to force him to reveal the location of monies that Post supposedly stole from Bailey.

Later that month, Krueger notified Defendant by phone that Bailey and Post would be traveling to Tijuana. Krueger and Defendant arranged for Bailey to bring Post to a specific location in Tijuana.

On August 20, 1998, Bailey kidnapped Post by luring and transporting him from San Diego to Tijuana. Two men acting at Defendant's direction abducted Post from a Tijuana shopping center as Defendant and Bailey watched from a distance. The two men, followed by Defendant and Bailey, took Post to a Tijuana residence where he was held.

Between August 20 and August 25, Defendant, Bailey, and others acting at Defendant's direction repeatedly threatened, beat, and seriously injured Post at the Tijuana residence. On August 25, 1998, Defendant and others killed Post in Mexico.

On April 13, 2000, Defendant was charged in a three-count indictment with conspiracy to murder, kidnap, and maim a person in a foreign country, in violation of 18 U.S.C. § 956. Two weeks later, a first superseding indictment was returned, which added a count charging Defendant with intimidating a witness.

On October 5, 2000, the United States asked Mexican authorities to arrest and detain Defendant. On April 22, 2001, judicial authorities in Mexico ordered Defendant to be detained pending his extradition to the United States. On June 18, 2001, the United States formally requested that Mexico extradite Defendant to the United States. On July 21, 2001, a judge in Mexico City granted the request to extradite Defendant "for the crimes of conspiracy to kill and kidnap another person and other related crimes." On August 8, 2001, the Mexican Foreign Ministry granted the extradition of Defendant, as requested.

On October 2, 2001, Mexico's Supreme Court of Justice of the Nation interpreted Mexico's constitution to prohibit extra-

dition for offenses that carry potential sentences of up to life imprisonment. In light of that judicial decision, on October 31, 2001, the judge in Mexico City issued a new order, denying Defendant's extradition as to the crimes of conspiracy to kill and kidnap a person in a foreign country "insofar as the sentence that could be imposed on the person sought, if extradited, is life imprisonment, which is considered to be a prohibited sentence [under Mexico's constitution]." The judge then granted Defendant's extradition as to the crime of conspiracy to maim but denied it as to the crime of intimidation of a witness.

On November 19, 2002, Mexico's Ministry of Foreign Affairs extradited Defendant to the United States to face the charge of conspiracy to maim a person in a foreign country. Defendant was physically removed from Mexico to the United States on July 3, 2003. Four days later, he was arraigned on the first superseding indictment.

On February 11, 2005, a federal grand jury returned a second superseding indictment, charging Defendant with conspiracy to kidnap and attempted kidnapping, in violation of 18 U.S.C. §§ 371 and 1201(d). The government of Mexico delivered a Diplomatic Note to the United States, dated December 8, 2005, specifying that Mexico "[d]id not object" to "reclassification" of the crimes involving Post.

Defendant moved to dismiss the second superseding indictment, claiming that it violated the doctrine of specialty. The district court denied the motion.

Trial commenced and, during a break in the testimony by Post's son, Defendant pleaded guilty to the second superseding indictment. In a written plea agreement, he reserved the right to appeal two adverse rulings of the district court: (1) denial of Defendant's motion to dismiss the second superseding indictment for an alleged violation of the specialty doctrine; and (2) denial of Defendant's motion to dismiss Count

2 of the second superseding indictment. The district court sentenced Defendant to consecutive sentences, totaling 300 months in custody, to be followed by three years of supervised release. Defendant timely appeals.

## DISCUSSION

### A. *The Doctrine of Specialty*

"The doctrine of specialty prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987) (alteration and internal quotation marks omitted); *see also United States v. Andonian*, 29 F.3d 1432, 1434-35 (9th Cir. 1994). Defendant argues that the district court erred when it accepted a Diplomatic Note, on which the court relied to find that the Mexican government agreed to Defendant's prosecution under the second superseding indictment. Defendant further asserts that the Mexican government denied his extradition "on all other causes" except the crime of conspiracy to maim a person in a foreign country.

### 1. *The Diplomatic Note was properly authenticated.*

Defendant first argues that the Diplomatic Note was not properly authenticated. We disagree.[1]

[1] The district court properly relied on the Diplomatic Note because it was authenticated according to Federal Rule of Evidence 901, which provides that documents may be authenticated by extrinsic evidence. For example, either the

---

[1]"We review evidentiary rulings for abuse of discretion." *United States v. Hollis*, 490 F.3d 1149, 1152 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 1120 (2008). In making that determination, we consider whether the district court's decision rested on relevant factors and whether there was a clear error of judgment. *Id.*

testimony of a witness with knowledge, or "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office," demonstrates the authenticity of a document. Fed. R. Evid. 901(b)(1), (7). Proponents need make only a "prima facie showing of authenticity." *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991) (internal quotation marks omitted).

**[2]** Here, the authenticity of the Diplomatic Note is established by the declaration of Linda Jacobson, Assistant Legal Advisor for Law Enforcement and Intelligence in the Office of the Legal Advisor for the United States Department of State:

> The Secretariat of Foreign Relations of Mexico transmitted Diplomatic Note No. 46341, dated December 8, 2005, to the U.S. Embassy in Mexico City. In accordance with common international practice, Diplomatic Note No. 46341 is initialed, but not signed by a Mexican government official. The Department of State considers Diplomatic Note No. 46341 to be an official communication of the Government of Mexico.

The Jacobson declaration, made under penalty of perjury and based on personal knowledge and on information obtained in the performance of official duties, suffices to establish a prima facie case of the authenticity of the Diplomatic Note. No contrary evidence appears in the record. Accordingly, the district court did not err in admitting the Diplomatic Note in evidence.

   2.  *Mexico did not object to the second superseding indictment.*

Defendant also argues that Mexico did not agree to his prosecution for the crimes of conviction. Again, we disagree.[2]

---

[2]We review de novo a district court's determination that a superseding indictment did not violate the doctrine of specialty. *Andonian*, 29 F.3d at 1434.

**[3]** A criminal defendant is protected under an extradition treaty "only to the extent that the surrendering country wishes." *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986) (per curiam). An extradition treaty "does not purport to limit the discretion of the two sovereigns to surrender fugitives for reasons of comity, prudence, or even as a whim." *Id.* "The Supreme Court has explicitly rejected the contention that a treaty of extradition creates a right not to be taken from the asylum country except in accordance with the provisions of the treaty." *Id.* (citing *Ker v. Illinois*, 119 U.S. 436, 441-42 (1886)).

Initially, a judge in Mexico City granted in full the United States' request to extradite Defendant for the crimes of conspiracy and kidnapping. Three months later, Mexico's Supreme Court of Justice of the Nation prohibited extraditions for offenses that carry potential sentences of up to life imprisonment. Because of that intervening decision, the lower court judge limited his earlier grant of extradition, but only "*insofar as the sentence that could be imposed* on the person sought, if extradited, is life imprisonment, which is considered to be a prohibited sentence [under Mexico's constitution]." (Emphasis added.) The judge in Mexico City also granted Defendant's extradition as to the crime of conspiracy to maim a person in a foreign country.

**[4]** By originally granting the United States' request for extradition in full and then revising it only to protect Defendant against imposition of a life sentence, the judge in Mexico City clearly implied that he would have granted Defendant's extradition as to kidnapping charges for which a life sentence could not be imposed. The second superseding indictment did not carry the potential for a life sentence. Rather, it *decreased* Defendant's total sentencing exposure to 25 years (under 18 U.S.C. §§ 371, 1201(d)), from 35 years (under 18 U.S.C. § 956(a)(2)(B)).

**[5]** Further, the second superseding indictment was based on the same facts that underlie Defendant's original extradi-

tion. And, perhaps most importantly, the Mexican government agreed to the prosecution under the second superseding indictment. As the Mexican government stated in the Diplomatic Note, "the Foreign Ministry does not object to the reclassification of the crime pursuant to Article 17.2, paragraphs a) and b) of the Extradition Treaty between the United Mexican States and the United States of America."

Defendant asserts that Mexico was silent with respect to the second superseding indictment and that we cannot read into its silence that country's acquiescence. He interprets the Diplomatic Note's phrasing, "the Foreign Ministry does not object to the reclassification of the crime" in the new indictment, to mean that "the Foreign Ministry takes no position." That reading cannot survive contextual scrutiny. When our government inquires whether a foreign government objects to a prosecution, and the foreign government replies explicitly, in writing, that it "does not object," the foreign government has agreed that the United States may proceed.

**[6]** Because the Mexican government approved the extradition of Defendant insofar as he was charged with crimes related to the Post events that did not carry a life sentence, and because the Mexican government chose formally not to object to the prosecution of Defendant under the second superseding indictment, there was no violation of the doctrine of specialty.

B.  *Propriety of Convictions of Conspiracy and Attempt to Kidnap*

Defendant argues that he cannot be convicted of both conspiracy to kidnap and attempt to kidnap. His argument, although unclear, seems to have two components. First, he argues that, by charging him with conspiracy to kidnap Post, the government necessarily has alleged that the crime of kidnapping Post was completed, rather than inchoate. Second, he argues that he cannot be convicted of the lesser included

offense of attempted kidnapping if he actually committed the greater offense of a completed kidnapping. Defendant is mistaken on both theories.

Conspiracy to commit a crime is not equivalent to the completion of that crime. "By definition, conspiracy and attempt are inchoate crimes that do not require completion of the criminal objective." *United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2100 (2008). The crime of conspiracy comprises three elements: "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Sullivan*, 522 F.3d 967, 976 (9th Cir. 2008) (per curiam) (internal quotation marks omitted). The crime does not require completion of the intended underlying offense. An attempt to commit a crime, on the other hand, comprises two elements: "(1) an intent to engage in criminal conduct, [and] (2) an overt act constituting a substantial step toward the commission of the crime." *United States v. Morales-Perez*, 467 F.3d 1219, 1222 (9th Cir. 2006) (internal quotation marks omitted). Just like conspiracy, an attempt to commit a crime does not require completion of the crime.

**[7]** Each of those crimes contains an element that the other does not: Conspiracy does not require a "substantial step," while attempt does not require an "agreement." *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." (internal quotation marks omitted)). Accordingly, it is constitutionally permissible to charge and convict a defendant of both conspiring to commit a crime and attempting to commit the same crime. *See, e.g.*, *Macias-Valencia*, 510 F.3d at 1013 (charging the defendant with conspiracy to possess with

intent to distribute a controlled substance and attempt to possess with intent to distribute).

**[8]** Here, Defendant conspired to commit an actual kidnapping. He also committed a substantial step toward kidnapping. Thus, he was properly convicted of both conspiring to kidnap and attempting to kidnap.

**[9]** The fact that the acts he committed could have supported a conviction for the greater crime of a completed kidnapping does not entitle Defendant to an acquittal on either the conspiracy or the attempt conviction. Rule 31 of the Federal Rules of Criminal Procedure sets forth that "[a] defendant may be found guilty of . . . (1) an offense necessarily included in the offense charged; (2) an attempt to commit the offense charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." Fed. R. Crim. P. 31(c). This "rule codified pre-existing law." *Keeble v. United States*, 412 U.S. 205, 208 n.6 (1973). Indeed, if Defendant's contention, that one cannot be convicted of a lesser included offense if he actually committed the greater offense, were true, then most plea agreements would be unenforceable. Defendant has pointed to no constitutional or statutory provision that would yield that result.

AFFIRMED.