In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3889

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SINISA MURATOVIC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 217-2—**James B. Zagel**, *Judge.*

ARGUED JUNE 4, 2013—DECIDED JUNE 25, 2013

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Sinisa Muratovic pled guilty to a three-count indictment charging him with attempted robbery in violation of the Hobbs Act, conspiracy to commit robbery in violation of the Hobbs Act, and knowingly carrying a firearm during and in relation to a crime of violence. He now challenges that plea on three grounds. We affirm.

## I. Background

### A. Factual Background

During his change of plea hearing, Muratovic admitted to planning a robbery of a truck that he believed would carry a large amount of drug money from Illinois to California. For four to five months in 2008, Muratovic and his co-conspirators planned the robbery and conducted surveillance on the truck. On December 7, 2008, the group met to finalize the robbery plan. They would follow the truck as it left Illinois, and the robbery would occur at a highway rest stop after one of the passengers had exited to use the restroom. At that time, the co-conspirators would don disguises, rush toward the remaining occupant of the truck, threaten that person at gunpoint, and steal the money, using violence if necessary.

That same evening, the co-conspirators invited Individual A, a police informant who agreed to wear a wire, to participate in the scheme. In the early, pre-dawn hours of the next day—December 8—Muratovic and his crew met in the parking lot of a Niles grocery store, carrying firearms intended for use to threaten or shoot the targets of the robbery. From this meeting, they traveled to another location to pick up yet another gun. Sufficiently armed, the co-conspirators located their target, a yellow truck, in an Addison, Illinois parking lot and began conducting additional surveillance.

Next, two co-conspirators went on several supply runs while the others remained at the Addison parking lot,

watching the truck. The two purchased additional items for use in the robbery: a knife, two cans of pepper spray, gas cans, duct tape, clothing for disguising themselves, and a magnification scope. Equipped with everything needed to consummate their plan, the co-conspirators continued sitting in the Addison parking lot, waiting for the truck to depart. Finally, the occupants of the truck arrived. In the early afternoon, however, Muratovic left the surveillance site without having robbed the truck. In the weeks that followed, he continued to discuss the robbery plan with his co-conspirators and Individual A. Satisfied with Muratovic's competency, the district court found the plea knowing and voluntary. The court accepted the plea.

After Muratovic's guilty plea, the government submitted its version of the offense (the "Government's Version"), providing additional details about the plot. It attached transcripts made from the recordings of Individual A's meetings with Muratovic and the other co-conspirators. That transcript revealed the extensiveness of the robbery plot and highlighted Muratovic's role in the robbery.

Muratovic also offered additional details in his post-arrest interview, the report of which was attached to the Government's Version. He described how he drove his co-conspirators to the truck's location to "case" the truck and explained how he sought out a second gun for the robbery. He admitted to carrying guns the night of the planned robbery and to having guns with him in the car while driving to find the truck in Addison.

Muratovic also explained the need for the gas cans. The targeted truck could travel farther without refueling than Muratovic's car, so the conspirators bought the gas cans to refuel more quickly on the highway shoulder rather than exiting for a gas station. They had even filled up the gas cans on the night planned for the robbery.

Finally, Muratovic explained why he left in the afternoon without completing the robbery. While he and his crew were waiting, he saw a car pull into the parking lot with the truck, remain for five minutes, and then leave. Muratovic thought the driver of this car was the driver of the truck. He believed that the driver left the parking lot after spotting Muratovic. The yellow truck never left the Addison parking lot, and the co-conspirators were unable to execute their plan on December 8.

## B.  Procedural History

Muratovic did not dispute these facts and did not submit his own version of the offense. Nor did Muratovic dispute the findings of the pre-sentence report (PSR), which the district court adopted without change. He ultimately received a 90-month prison term and now appeals from his conviction, raising three grounds of error. First, he suggests that no factual basis existed for Hobbs Act jurisdiction. Second, he attacks his attempt conviction, suggesting the absence of a factual basis that he took a substantial step toward commission of the robbery. Finally, he argues that conspiracy

to violate the Hobbs Act is not a violent felony under § 924(c).

## II. Discussion

Muratovic raised none of these issues before the district court so we review each only for plain error. *United States v. Arenal*, 500 F.3d 634, 637 (7th Cir. 2007). That standard requires "obvious" error that is "clear under current law." *United States v. McGee*, 60 F.3d 1266, 1271-72 (7th Cir. 1995).

When a defendant pleads guilty, the court must find "a factual basis for the plea" before "entering judgment." Fed. R. Crim. P. 11(b)(3). In doing so, a court may rely on any facts in the record to which the defendant assented or, at least, did not object. *United States v. Davey*, 550 F.3d 653, 658 (7th Cir. 2008); *Arenal*, 500 F.3d at 638. *Compare* Fed. R. Crim. P. 11(b)(1)-(2) (requiring district court to make certain findings "[b]efore *accepting* a plea of guilty" (emphasis added)), *with* Fed. R. Crim. P. 11(b)(3) (requiring district court to find a factual basis "[b]efore *entering judgment* on a guilty plea" (emphasis added)). Thus, although Muratovic focuses only on the facts to which he admitted at the change of plea hearing, we may look beyond that brief exchange and also consider the facts presented in the Government's Version and in the PSR because Muratovic objected to

neither.[1] Taking all those facts into account, we see plenty to provide a factual basis for Muratovic's plea, both as to satisfaction of the jurisdictional element and the substantial step requirement. Because we find no deficiency in Muratovic's attempted robbery conviction, we need not address his challenge to the § 924(c) conviction.

## A. The Record Provides a Factual Basis to Support a Finding that Muratovic's Hobbs Act Robbery Scheme Affected Interstate Commerce

The Hobbs Act prohibits "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). The jurisdictional requirement—that the robbery obstruct, delay, or affect commerce—is broad,

---

[1] Muratovic asks us not to consider the transcript of conversations captured on Individual A's wire. These quotes were not set forth in the actual PSR but only attached as an exhibit to the Government's Version. Because he could object only to the PSR and not the Government's Version, he argues that these are not facts the court may consider in evaluating whether a factual basis exists for the plea. But Muratovic ignores that the PSR attached the Government's Version, including the transcript. And he also ignores that though he had the opportunity to submit his own version of the offense, he did not do so. *See* N.D. Ill. Crim. R. 32.1(e) (directing defense counsel to submit defendant's version of the offense and noting "[f]ailure to submit a version of the offense conduct . . . may constitute waiver of the right to have such material considered within the PSR").

coextensive with the power to regulate commerce that Congress enjoys under the Commerce Clause. *See id.* § 1951(b)(3); *United States v. Shields*, 999 F.2d 1090, 1098 (7th Cir. 1993) (citing *Stirone v. United States*, 361 U.S. 212, 215 (1960)). Because the Hobbs Act criminalizes not just successful robberies but attempts as well, the government need not prove that the defendant's actions actually obstructed, delayed, or affected commerce; a "realistic probability" of that result is enough. *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000). Given Muratovic's own statements, captured on the confidential informant's wire, no "obvious error" arose from the district court's entry of judgment on Muratovic's plea to the attempted robbery charge.

Muratovic hatched a plan to steal money from individuals traveling cross-country for the express purpose of making a purchase with that money. "[C]ommerce is affected when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through [robbery], thereby curtailing the victim's potential as a purchaser of such goods." *Bailey*, 227 F.3d at 798-99 (quoting *United States v. Elders*, 569 F.2d 1020, 1025 (7th Cir. 1978)); *accord Shields*, 999 F.3d at 1098; *United States v. Rindone*, 631 F.2d 491, 493-94 (7th Cir. 1980) (per curiam). We have labeled this jurisdictional rationale the "asset depletion theory." Here, Muratovic targeted a truck he believed would travel from Illinois to California with the purpose of engaging

in a commercial transaction.[2] This plan thus presented a "realistic possibility" of depleting the victims' resources and thereby curtailing the victims' ability to complete that commercial transaction, providing the nexus to commerce necessary for Hobbs Act jurisdiction.

Muratovic protests that "the government did not allege that this truck actually contained money or that the truck would have actually crossed state lines." His protest, however, is misplaced. The record abounds with evidence suggesting Muratovic and his co-conspirators planned to rob the truck *after it crossed* state lines. The PSR explains that "[d]efendant Muratovic explained they would not rob the truck until it left Illinois." The conversations captured on the informant's wire confirm this aspect of the plan. They make clear that the co-conspirators believed the truck would carry large amounts of drug money to California and return to Illinois with drugs. And their preparations reveal an intention to follow the truck for more than a minimal portion of that drive: they had purchased gas cans and gasoline to allow for quicker refueling on the side of the highway, rather than at a gas station. Finally, Muratovic's co-conspirators explicitly stated their reason for planning to rob the truck only after it had crossed the state line: "It is better if we do not hit them in Illinois. If we hit them

---

[2] Although the transaction would have been illegal, the Hobbs Act applies no less when the "article or commodity" at issue is contraband. *See, e.g.*, *Bailey*, 227 F.3d at 798; *United States v. Thomas*, 159 F.3d 296, 297-98 (7th Cir. 1998).

in Illinois, they would think that somebody from the local area hit them."[3]

Admittedly, the government offered no proof that the yellow truck cased by Muratovic and his fellow conspirators actually did contain drug money and actually was slated for a drug run to California. It didn't need to offer such proof, though, if the facts as the defendant believed them satisfy the jurisdictional element. *See Bailey*, 227 F.3d at 798-99. After all, "mistake of fact is not a defense to an attempt charge." *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007); *see also id.* (noting that the inability to complete the crime "does not diminish the sincerity of any efforts to accomplish that end" (quoting *United States v. Cotts*, 14 F.3d 300, 307 (7th Cir. 1994))). Like Muratovic's case, *Bailey* also involved a defendant planning to steal a drug dealer's drug money. 227 F.3d at 798-99. In reality, the targeted victim was not a true drug dealer but an FBI informant with no intention of ever selling drugs. Thus, the *Bailey* defendant argued, the effect on interstate commerce was "purely imaginary." *Id.*

---

[3] Other parts of the conversation confirm that initiating the robbery outside Illinois formed a key aspect of the plan. "The thing is," one co-conspirator told another, "they will not expect this. When they leave Illinois, they will become comfortable. They will go through Oklahoma. They always use the same route." Later, the same co-conspirator explained that "[t]hey take money to California to buy grass there. Then they bring the grass here. I do not want the grass. It is a big hustle. Cash is cash. Especially if we hit them out of Illinois, they won't know anything."

at 798. Nevertheless, the *Bailey* defendant's belief that he would rob a cocaine dealer provided the realistic possibility of interstate effects because "the robbery of cocaine dealers has an effect on interstate commerce." *Id.* at 799; *see also Thomas*, 159 F.3d at 297-98. Such belief provides the requisite interstate effect in this case, too. Muratovic readily admitted that he believed the truck "periodically traveled from Illinois to California carrying hundreds of thousands of dollars to be used to purchase large quantities of marijuana." If anything, Muratovic's situation presents a stronger case for jurisdiction than found in *Bailey*. *Bailey* relied on the more general interstate effect of cocaine trafficking in the aggregate, not on any beliefs the *Bailey* defendant held about the interstate activities of the specific drug dealer he planned to rob. 227 F.3d at 798-99. Muratovic, in contrast, knew the interstate dealings of his specific target. In fact, interstate travel formed a crucial plank in the robbery plan. It offered the rest stop venue that would isolate the truck's driver and shield the co-conspirators from the suspicion that would arise if the robbery occurred in Illinois. On this record, we find no plain error in the district court's conclusion that a factual basis supported federal jurisdiction under the Hobbs Act.

*United States v. Watson*, 525 F.3d 583 (7th Cir. 2008), does not require otherwise. That case also involved stolen money, and the defendant challenged his conviction on jurisdictional grounds. The government offered two theories in support of jurisdiction—the asset depletion theory described above and a separate theory that

the money itself is an article that travelled in interstate commerce. *Id.* at 590. *Watson* rejected only the second: "if cash could serve as the jurisdictional hook, any robbery would be a federal crime under the Hobbs Act." *Id.* Nothing in *Watson* questioned the validity of the asset depletion theory for proving jurisdiction under the Hobbs Act. *See id.* More importantly, the *Watson* court's chief concern was the failure of the jury to return a special verdict identifying the jurisdictional theory under which it convicted. *Id.* "When an indictment offers two theories of liability and a jury returns a general verdict that does not say under which theory it convicted, . . . we cannot . . . credit the jury if one of the theories is *legally* insufficient[.]" *Id.* (emphasis in original). Of course, Muratovic pled guilty. Thus, *Watson*'s conclusions regarding the legal sufficiency of the government's second theory in that case have no bearing here, where the asset depletion theory quite properly establishes jurisdiction.

## B. The Record Provides a Factual Basis for Concluding Muratovic Took a Substantial Step Toward Committing Hobbs Act Robbery

The Hobbs Act criminalizes not just robbery but attempted robbery as well. *See* § 1951(a). Attempt convictions require specific intent to commit the full robbery and a substantial step taken toward that end. *E.g.*, *United States v. Villegas*, 655 F.3d 662, 668 (7th Cir. 2011); *United States v. Barnes*, 230 F.3d 311, 314 (7th Cir. 2000). Muratovic argues only that the record lacks

a factual basis for the substantial step requirement. Again, we find no plain error in the district court's conclusion otherwise.

A substantial step is "some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." *Villegas*, 655 F.3d at 669 (quoting *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008)). It requires "something more than mere preparation, but less than the last act necessary before actual commission of the substantive crime." *E.g.*, *Barnes*, 230 F.3d at 315 (citing *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985)). This line between mere preparation and a substantial step is "inherently fact specific; conduct that would appear to be mere preparation in one case might qualify as a substantial step in another." *Villegas*, 655 F.3d at 669 (quoting *United States v. Sanchez*, 615 F.3d 836, 844 (7th Cir. 2010)). Generally, a defendant takes a substantial step when his actions "make[] it reasonably clear that had [the defendant] not been interrupted or made a mistake . . . [he] would have completed the crime." *Sanchez*, 615 F.3d at 844 (quoting *Gladish*, 536 F.3d at 648).

The record in this case provides plenty from which to find a factual basis that had Muratovic "not been interrupted or made a mistake . . . [he] would have completed the crime." *Id.* By the afternoon of December 8, the co-conspirators had assembled a team, finalized the robbery plan, conducted surveillance on the truck, procured two handguns and all other supplies called for in

the plan, and even filled up gas cans for use while fol-lowing the truck on the highway. They had arrived at the origination point for the robbery on the day set for the robbery. And Muratovic's own admissions permit the inference that full execution of the robbery on December 8 fell through only because he suspected the truck's driver had seen his surveillance and abandoned the plan to leave for California that day. *See Villegas*, 655 F.3d at 669 (evidence supported attempt charge by "mak[ing] reasonably clear that had [the defendant] not been interrupted, he would have participated in the robbery"). Thus, Muratovic's actions leading up to the afternoon of December 8 provide a factual basis sup-porting Muratovic's guilty plea to the attempt charge.

Muratovic argues his conduct amounted only to mere preparation. But other cases have found the substantial step requirement satisfied by facts nearly identical to those in this case. In *Villegas*, for example, the defendant hatched a plan to rob an armored truck when it stopped at a particular ATM. 655 F.3d at 665. To that end, he pre-arranged a meeting location, procured license plates for use on the getaway car, and cased the location planned for the robbery. *Id.* at 669. The defendant also discussed with his co-conspirators disguises the team would wear during the robbery and ensured a gun was stashed in the trunk of the car, confirming that the gun "work[ed] and everything." *Id.* Officers arrested the defendant about one mile from the ATM on the day of the robbery. *Id.* at 666. Noting this conduct occurred after eight weeks of recorded conversations detailing the specifics of the plan, *Villegas* found the conduct

"went beyond mere preparation and was strongly corroborative of the firmness of [the defendant's] criminal intent" to commit Hobbs Act robbery. *Id.* at 669 (internal punctuation and citation omitted); *see also Barnes*, 230 F.3d at 315. This conduct is nearly identical to Muratovic's: both defendants developed an extensive and detailed robbery plan over several months' time, engaged in all preparations called for in the plan, and had arrived at the site of the planned robbery on the day of the planned robbery. In light of *Villegas,* the district court did not commit plain error in concluding that Muratovic engaged in a substantial step toward committing the planned robbery.

Muratovic challenges two of these key facts. First, he argues that nothing in record suggests he intended to actually commit the robbery on December 8. Muratovic's own words, uttered early on the morning of December 8 while the co-conspirators prepared for the robbery, reveal otherwise: "I am telling you that we will have him *this evening*. He is ours *this evening*, man, no matter what! Whether I had to kill him or not, he . . . we will take everything from him, man. The man has money, man. The man drives a Bentley, man" (emphasis added). Furthermore, the PSR states that "[i]t was further part of the scheme that, on or about December 8, 2008, the defendants and Individual A waited for hours near the location of the truck for the occupants of the *truck to leave*" (emphasis added). The record therefore provides a factual basis to believe Muratovic and his co-conspirators planned to commit the robbery that day.

But even if the co-conspirators did not arrive at the Addison parking lot planning to rob the truck that day, crossing from mere preparation to a substantial step does not require police to wait until the day of the planned crime to intervene with an arrest. *Sanchez*, for example, found a substantial step toward a kidnapping when the defendant procured a safehouse, arranged for the cooperation of a Mexican drug cartel, and approved a van for use in the kidnapping. 615 F.3d at 844. It did not matter that "the kidnapping was not imminent at the moment [the defendant] was arrested" because the defendant still "need[ed] a week to secure license plates for the van." *Id.* Thus, satisfaction of the substantial step requirement does not turn on whether the defendant has reached the day planned for the robbery.

Second, Muratovic argues that nothing in the record confirms that he ended his surveillance of the truck only after he thought the drivers of the truck had seen him. Again, the record provides a factual basis for this conclusion. Muratovic told police after his arrest that he believed the driver of a car that pulled into the Addison parking lot was the truck driver, who ultimately left without boarding the yellow truck because he saw the co-conspirators casing the truck. His statements on the recording corroborate this belief. "An old man," Muratovic told his co-conspirators. "You know how he was looking at us, bro." Thus, the record provides factual support that Muratovic left his surveillance post only because he believed his target had spotted him and, as a consequence, opted not to begin the drug run that day.

In short, what matters for the substantial step inquiry is whether the defendant has made it "reasonably clear" that without the interruption or mistake, he would have ultimately consummated the criminal plot. *See Sanchez*, 615 F.3d at 844 (quoting *Gladish*, 536 F.3d at 648). Given the record here—which showed a detailed and finalized robbery plan, extensive surveillance, and possession of all implements called for in the plan—and its factual similarity to *Villegas*, Muratovic's actions made it "reasonably clear" that had the truck in question departed for California while Muratovic and his co-conspirators were watching it on December 8, they would have been following closely behind, waiting for the truck to reach a rest stop.

## C.   The Court Need Not Reach the Question of Whether Conspiracy to Commit Hobbs Act Robbery Qualifies as a Crime of Violence Under 18 U.S.C. § 924(c)

In his final assault on his guilty plea, Muratovic challenges his conviction under § 924, arguing that conspiracy to commit Hobbs Act robbery is not a crime of violence within the scope of that statute. We do not reach this question, however, because the indictment identified both the attempt and conspiracy charges as crimes of violence under § 924(c). Muratovic has not argued that attempted Hobbs Act robbery falls outside the scope of § 924(c) so his conviction under § 924(c) must stand even if we accepted his argument that conspiracy to commit Hobbs Act robbery is not a crime of violence. Because resolution of that question has no impact on this appeal, we leave it unanswered today.

### III.  Conclusion

For these reasons, we AFFIRM Muratovic's conviction and guilty plea.