**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

IVAN SOTO-BARRAZA,
  *Defendant-Appellant.*

No. 15-10586

D.C. No.
4:11-cr-00150-
DCB-BPV-3

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

JESUS LIONEL SANCHEZ-MEZA,
AKA Leonel Meza-Portillo, AKA
Lionel Meza-Portillo, AKA Leonel
Portillo-Meza, AKA Lionel Portillo-
Meza, AKA Jesus Leonel Sanchez-
Meza,
  *Defendant-Appellant.*

No. 15-10589

D.C. No.
4:11-cr-00150-
DCB-BPV-5

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted October 17, 2017
Submission Vacated January 24, 2018
Resubmitted January 17, 2020
San Francisco, California

Filed January 17, 2020

Before:  Sandra S. Ikuta and Andrew D. Hurwitz, Circuit
Judges, and Michael J. McShane,* District Judge.

Opinion by Judge Ikuta

---

**SUMMARY**\*\*

---

**Criminal Law**

The panel affirmed two defendants' convictions for first-degree murder of a Border Patrol agent, conspiracy to interfere with and attempted interference with commerce by robbery in violation of the Hobbs Act, and assault on a U.S. Border Patrol Agent; and vacated the defendants' convictions for carrying and discharging a firearm in furtherance of a crime of violence.

---

\* The Honorable Michael J. McShane, United States District Judge for the District of Oregon, sitting by designation.

\*\* This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the defendants were properly extradited in accordance with the United States's treaty with Mexico.

The panel held that the district court's jury instructions for the Hobbs Act offenses were not plainly erroneous, and rejected the defendants' argument that the instructions constituted a constructive amendment of the indictment that allowed them to be convicted of extortion.

The panel held that the district court properly denied the defendants' motion for judgment of acquittal as to attempted robbery because the evidence was sufficient to establish that the defendants took a substantial step toward commission of the robbery.

In a concurrently filed memorandum disposition, the panel accepted the government's concession that conspiracy to commit Hobbs Act robbery is not a crime of violence and thus vacated the defendants' convictions under 18 U.S.C. § 924(c).

## COUNSEL

Ramiro S. Flores (argued), Law Office of Ramiro S. Flores P.L.L.C., Tucson, Arizona; Andrea Lynn Matheson (argued), Matheson Law Firm P.C., Tucson, Arizona; for Defendants-Appellants.

David D. Leshner (argued), Special Attorney for the United States; Jeff Sessions, Attorney General; Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Ivan Soto-Barraza and Jesus Lionel Sanchez-Meza appeal their convictions for the first degree murder of United States Border Patrol Agent Brian Terry; conspiracy to interfere with and attempted interference with commerce by robbery in violation of the Hobbs Act; assault on a U.S. Border Patrol Agent; and carrying and discharging a firearm in furtherance of a crime of violence. We conclude that the defendants were properly extradited in accordance with the terms of the United States's treaty with Mexico. We hold that the jury instructions for the Hobbs Act offenses were not plainly erroneous, and reject defendants' argument that the instructions constituted a constructive amendment of the indictment. And we conclude that the evidence was sufficient to establish that the defendants took a substantial step toward commission of the robbery offense.[1] For the reasons below and in our concurrently-filed memorandum disposition, ___ Fed. App'x ___ (9th Cir. 2020), we vacate defendants' convictions on Count 9 and affirm in all other respects.

I

In September 2010, the United States Border Patrol Tactical Unit (BORTAC) for the Tucson sector launched Operation Huckleberry. The goal of Operation Huckleberry was to apprehend gangs that preyed on drug smugglers in the Arizona Mesquite Seep.

---

[1] We also deny defendants' motion to strike the government's letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure.

The Mesquite Seep is an area of rough terrain, covered with canyons, cliffs, and steep hills, about 11 miles north of the Mexican border. At the time Operation Huckleberry commenced, except for two foot trails, the area was accessible only by all-terrain vehicles. The Mesquite Seep was well known as part of a drug trafficking corridor. Bands of eight to twelve men would carry 45 or more pounds of marijuana in homemade backpacks as they traveled northbound from Mexico into the Seep, and then east to Interstate 19. This smuggling corridor was also well known to "rip crews," small gangs of bandits armed with assault weapons who stalked the smugglers to steal their marijuana. Operation Huckleberry was aimed at stopping rip crew activity in the Seep.

In December 2010, six BORTAC agents were deployed to the Mesquite Seep for a 48-hour operation. The team consisted of Agents William Castano (the team leader), Gabriel Fragoza, Timothy Keller, Brian Terry, Christopher Conner, and Charles Veatch. The agents were deployed in an area commonly used for smuggling.

Near the end of the 48 hours, the Nogales station alerted the team to potential traffic moving east towards the team's position. Three agents moved to a line above a wash. Using a thermal monocular, Agent Castano saw armed men approaching. At least two of the men had weapons in the "ready position," aimed forward and ready to fire. As they approached, Agent Castano yelled "Policia!" Some of the men ran; others stopped, turned towards the agents, and raised their weapons. In response, Agent Fragoza fired his non-lethal shotgun, while announcing in Spanish: "get down, get down." The agents saw multiple muzzle flashes from the

guns in the wash, and returned fire. Agent Terry was hit by a gunshot from the wash, and later died of the wound.

At the crime scene, the FBI recovered two AK-47-style assault rifles and five shell casings, but could not determine whether either of the rifles fired the bullet that killed Agent Terry. The FBI also found five backpacks containing food, water, and ammunition. Fingerprint and DNA analysis linked the rifles, backpacks, and the backpacks' contents to Soto-Barraza and Sanchez-Meza.

A grand jury indicted Soto-Barraza, Sanchez-Meza, and the four other rip crew members on nine counts, charging the defendants with murder of Agent Terry; Hobbs Act conspiracy to interfere and attempted interference with commerce by robbery; assault on four Border Patrol officers; and carrying and discharging a firearm in furtherance of a crime of violence.[2]

Almost a year and a half later, Mexican authorities arrested Sanchez-Meza and transported him to Mexico City, where he was interviewed by an FBI agent. After being advised of his *Miranda* rights, Sanchez-Meza confessed to his involvement in the Mesquite Seep incident. He admitted that he entered Arizona from Sonora, obtained AK-47-style weapons from a hidden cache, and began searching for

---

[2] This indictment was ultimately replaced by a Fifth Superseding Indictment (the operative pleading here), but the counts remained the same. The counts at issue here are: Count 1, first-degree murder of United States Border Patrol Agent Brian Terry, 18 U.S.C §§ 1111, 1114; Count 3, conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951; Count 4, attempted interference with commerce by robbery, 18 U.S.C. § 1951; and Count 9, carrying and discharging a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i), (iii).

marijuana traffickers in order to rob them at gunpoint.  When shown photographs of assault rifles recovered at the crime scene, Sanchez-Meza stated they were "similar types to the weapon he carried."    Sanchez-Meza signed a written declaration acknowledging his confession.

A year later, Mexican authorities arrested Soto-Barraza. Two FBI agents interviewed Soto-Barraza in Spanish in a Mexican prison during the following month.  After being advised of his *Miranda* rights, Soto-Barraza also admitted his involvement in the events surrounding the shooting.  Like Sanchez-Meza, Soto-Barraza admitted that he entered the United States on foot from Sonora into Arizona; obtained weapons from a hidden cache of firearms; and planned to rob marijuana smugglers.  He also admitted to carrying a loaded assault rifle and stated that a photograph of one of the rifles found in the wash was similar to the weapon he carried that night.

The government requested extradition of the defendants and Mexico granted the requests.  The orders from the Mexican Department of Foreign Affairs stated that: "the formal international extradition request made by the government of the United States of America, regarding the person sought, adheres to the postulates contained in the Extradition Treaty between the United Mexican States and the United States of America and that the extradition of the aforementioned requested person is warranted; therefore the Department determines that there are sufficient elements to grant, and does grant, the extradition" of both defendants. The orders stated that each defendant could be prosecuted in district court for all the charges listed in the indictment, and that the offenses stated in each count met the statutory

definitions contained in Mexico's Federal Penal Code, in effect at the time of the events.[3]

Soto-Barraza moved to dismiss the indictment, arguing that his extradition was unlawful because Mexico did not have equivalent offenses. He later moved for a declaratory judgment on the same ground. Sanchez-Meza subsequently joined the motion, which the district court denied.

The seven-day trial began in September 2015. After the government rested, the defense moved for a directed verdict, contending that the rip crew's preparations did not constitute a "substantial step" necessary for an attempted robbery. The court denied the motion.

The jury returned guilty verdicts on all nine counts. The court denied the defense's post-conviction motion for a judgment of acquittal and sentenced Soto-Barraza and Sanchez-Meza to life imprisonment for Count 1; concurrent 240-month sentences for Counts 3, 6, 7, and 8; and consecutive sentences of 120 months for Count 9. This appeal followed.

II

We first address defendants' claim that the district court erred in denying their motion to dismiss the indictment and

---

[3] The orders established that Count 1 (first degree murder) met the statutory definition in §§ 302 and 307 of Mexico's Federal Penal Code; Count 3 (conspiracy) met the statutory definition in § 164 of Mexico's Federal Penal Code; Count 4 (attempted robbery) met the statutory definition in §§ 367 and 371 of Mexico's Federal Penal Code; and Counts 5, 6, 7, and 8 (assault against a federal official) met the statutory definition of §§ 288 and 293 of Mexico's Federal Penal Code.

for declaratory relief on the ground that their extradition violated the Mexico-United States Extradition Treaty.

"The right to demand and obtain extradition of an accused criminal is created by treaty." *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987) (quoting *Quinn v. Robinson*, 783 F.2d 776, 782 (9th Cir. 1986)) (internal quotation marks omitted). The Treaty, effective January 25, 1980, imposes two requirements relevant to defendants' motions.

First, Article 17 of the Treaty incorporates the "rule of specialty," which precludes the requesting country from prosecuting a defendant for any offense other than that for which the surrendering country consented to extradite, unless surrendering country approves. *See United States v. Iribe*, 564 F.3d 1155, 1158 (9th Cir. 2009). Article 17 states: "A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State," absent certain exceptions not relevant here.

Second, Article 2 incorporates the principle of "dual criminality," that "an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations." *Quinn*, 783 F.2d at 783. Article 2(1) provides that "[e]xtradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." The Appendix to the Treaty lists 31 categories of offenses,

including murder and robbery.  Article 2(3) provides that
"[e]xtradition shall also be granted for wilful acts which,
although not being included in the Appendix, are punishable,
in accordance with the federal laws of both Contracting
Parties, by a deprivation of liberty the maximum of which
shall not be less than one year."

We "defer to a surrendering sovereign's reasonable
determination that the offense in question is extraditable."
*United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995);
*see also Van Cauwenberghe*, 827 F.2d at 429 (courts should
accord "proper deference" to "a surrendering country's
decision as to whether a particular offense comes within a
treaty's extradition provision").  But we review de novo the
"district court's decision that an offense is an extraditable
crime." *Van Cauwenberghe*, 827 F.2d at 428.  We likewise
review de novo the district court's "[i]nterpretation of an
extradition treaty, including whether the doctrines of dual
criminality and specialty are satisfied."  *United States v.
Anderson*, 472 F.3d 662, 666 (9th Cir. 2006).

In their motions to dismiss and for declaratory relief,
Soto-Barraza and Sanchez-Meza argued that their extradition
for felony murder, assault, and conspiracy (or attempt) to
interfere with commerce by robbery violated the Treaty
because Mexico does not criminalize these exact offenses and
they are not listed in the Treaty.  Relying on expert testimony
of a law professor, the defendants argue that the Mexican
statutes listed in the Treaty criminalize only simple homicide,
and felony murder is not "punishable in accordance with the
laws" of Mexico.  They also argue that Mexican law does not
punish interference with commerce by robbery of an illegal
substance, and does not recognize the crime of assault on a
federal official unless the official was physically injured or

feared for his life.  Finally, defendants argue that the Treaty precludes the government from imposing a true life sentence for their offenses, because life sentences in Mexico last no more than 70 years.

Their arguments fail.  In its extradition orders, Mexico listed the United States federal charges at issue, and stated that extradition for these charges conformed to the Treaty's terms.  The orders also identified analogous statutory provisions under Mexico's Federal Penal Code for each of the offenses in the indictments.  The principle of dual criminality does not require that the crimes be identical; rather, only the "'essential character' of the acts criminalized by the laws of each country" must be the same, and the laws "substantially analogous." *Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008) (quoting *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988)).  Because Mexico elected to extradite the defendants on all charges listed in the indictment, the Treaty's principles of specialty and dual criminality are satisfied.  *See Iribe*, 564 F.3d at 1160; *Van Cauwenberghe*, 827 F.2d at 428–29.

## III

We next address defendants' claim that the district court erred in instructing the jury on conspiracy to interfere with and attempted interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (the Hobbs Act).  Because defendants did not object to these instructions at trial, we review for plain error.  *See United States v. Reza-Ramos*, 816 F.3d 1110, 1123 (9th Cir. 2016).

We first turn to the district court's instruction for Count 4, attempted interference with commerce by robbery.  Both

parties requested that the district court give Ninth Circuit Model Instruction 8.142, entitled "Hobbs Act Extortion or Attempted Extortion by Force."[4]  The district court gave the proposed instruction, which included the following element: "First, the Defendants intended to induce drug smugglers to part with property by the wrongful use of actual or threatened force, violence, or fear."[5]  The Hobbs Act defines robbery in

---

[4] At the time, the Ninth Circuit model instructions did not have an instruction for Hobbs Act robbery.  In December 2016, the committee added a new instruction for Hobbs Act robbery.  Model Crim. Jury Instr. 9th Cir. 8.143A (2010 ed.), http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2017_9.pdf (last updated Sep. 2017) [hereinafter 2017 Instructions].  The committee most recently modified the instructions for Hobbs Act robbery in April 2019.  *See* Model Crim. Jury Instr. 9th Cir. 8.143A (2010 ed.), http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2019_12_0.pdf (last updated Dec. 2019); Manual of Model Criminal Jury Instructions, http://www3.ce9.uscourts.gov/jury-instructions/model-criminal (stating that Instructions 8.143A was last modified in April 2019).

[5] The full instruction read:

> The defendants are charged in Count 4 of the indictment with attempted interference with commerce by robbery in violation of Section 1951 of Title 18 of the United States Code.  In order for the defendants to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant intended to induce drug smugglers to part with property by the wrongful use of actual or threatened force, violence, or fear;

> Second, the defendants acted with the intent to obtain property;

a slightly different manner as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession." 18 U.S.C. § 1951(b)(1). The instruction differs from the statutory definition, in that it omits the language that the defendant took property from the victim "against his will" by means of "fear of injury," not just "fear."

Soto-Barraza and Sanchez-Meza now argue that the court's instruction is closer to the definition of "extortion" under the Hobbs Act, which is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). According to the defendants, the court's failure to provide instructions that included the phrases "against his will" and "fear of injury" resulted in a constructive amendment of the indictment that allowed them to be convicted of extortion, which is a per se reversible error.

---

Third, commerce from one state to another would have been affected in some way; and

Fourth, the defendants did something that was a substantial step toward committing the crime.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances.

We disagree. A constructive amendment "occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them," *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014) (quoting *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984)), such as "where (1) there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument, or (2) the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (alterations in original) (internal quotation marks omitted). Neither of those errors is present here. The government indicted the defendants for Hobbs Act robbery and adduced evidence to prove that offense, offering no evidence that the defendants engaged in extortion. We reject constructive amendment claims when the government does not introduce evidence at trial "that would enable the jury to convict the defendant for conduct with which he was not charged." *Ward*, 747 F.3d at 1191.

The defendants' claims are better interpreted as a challenge to the jury instructions. *Compare United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005) (reviewing a claim that the jury instruction misstated material elements of a statute), *with Ward*, 747 F.3d at 1191–92 (reviewing whether defendant was convicted of a crime not charged in the indictment). Viewing the defendants' claim in this light, we conclude that the slight differences between the court's instructions to the jury and the statutory definition of robbery do not constitute plain error. *See Reza-Ramos*, 816 F.3d at 1123. The omission of the phrases "against his will" and "fear of injury" did not make the instruction "misleading or

inadequate to guide the jury's deliberation." *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010) (quoting *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999)); *see also United States v. Tavakkoly*, 238 F.3d 1062, 1066 (9th Cir. 2001) ("Improper jury instructions will rarely justify a finding of plain error.") (quoting *United States v. Marin-Cuevas*, 147 F.3d 889, 893 (9th Cir. 1998)). Our conclusion that any error was not "plain" is further supported by the fact that the seven judges who comprise the Ninth Circuit Jury Instructions Committee adopted identical language to that used by the district court here for model instructions on Hobbs Act attempted robbery: "the defendant [attempted to induce][induced] [name of victim] to part with property by the wrongful use of actual or threatened force, violence, or fear." 2017 Instructions 8.142A, 8.143A; *see also Hofus*, 598 F.3d at 1174–75 (no error when district court's instruction "mirrored" the model instruction).[6]

Moreover, even if the omission of the two phrases ("against his will" and "fear of injury") qualified as an error that was plain, these defendants' substantial rights were not affected. Because the government presented overwhelming evidence that the rip crew members intended to take marijuana from the smugglers by force and against their will, including Soto-Barraza's and Sanchez-Meza's confessions, there is no significant possibility that the jury might have acquitted the defendants if the instruction had included the omitted language. *See United States v. Brooks*, 508 F.3d 1205, 1208 (9th Cir. 2007) (holding that a jury instruction is not plainly erroneous if there is not "a significant possibility

---

[6] While the committee more recently revised Instruction 8.143A, *supra* note 4, the district court's instruction was not plain error because the committee previously used the same language as the court.

the jury might have acquitted if it had considered the matter") (quoting *United States v. Steward*, 16 F.3d 317, 320 (9th Cir. 1994)).[7]

IV

Finally, we consider Soto-Barraza and Sanchez-Meza's challenge to the district court's denial of their motion for judgment of acquittal as to attempted robbery. We review de novo whether sufficient evidence supports a guilty verdict. *United States v. Rosales-Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016). We "assess the evidence in the light most favorable to the prosecution, determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 971 (quoting *United States v. Stewart*, 420 F.3d 1007, 1014–15 (9th Cir. 2005)).

"[A]n attempt conviction requires evidence that a defendant intended to violate the statute and took a substantial step toward completing the violation." *United States v. Mincoff*, 574 F.3d 1186, 1195 (9th Cir. 2009) (alterations in original) (quoting *United States v. Meek*, 366 F.3d 705, 720 (9th Cir. 2004)). "Mere preparation" is not a substantial step, *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011), but we have acknowledged that "[t]he

---

[7] For the same reason, we reject defendants' argument that the district court plainly erred in omitting the phrases "against his will" and "fear of injury" from its instruction on conspiracy to interfere with commerce by robbery, Count 3, which stated that "there was an agreement between two or more persons to induce drug smugglers to part with property by the wrongful use of actual or threatened force, violence, or fear." Sanchez-Meza and Soto-Barraza repeatedly conceded their guilt to conspiracy in their opening statements and closing arguments. *See Brooks*, 508 F.3d at 1208.

difference between making preparations and taking a substantial step toward the commission of a crime is one of degree," *Walters v. Maass*, 45 F.3d 1355, 1359 (9th Cir. 1995). "The line between mere preparation and a substantial step is inherently fact specific; conduct that would appear to be mere preparation in one case might qualify as a substantial step in another." *United States v. Villegas*, 655 F.3d 662, 669 (7th Cir. 2011). While acknowledging that it is difficult to identify "the point at which the defendants' activities ripen into an attempt," *United States v. Harper*, 33 F.3d 1143, 1148 (9th Cir. 1994), we have generally characterized that point as when a defendant's actions demonstrate "that the crime will take place unless interrupted by independent circumstances." *Mincoff*, 574 F.3d at 1195 (quoting *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007)).

In addressing this fact-specific inquiry, courts generally focus on factors such as whether defendants planned to commit an offense, *see United States v. Moore*, 921 F.2d 207, 209 (9th Cir. 1990), and whether defendants equipped themselves with the items needed to commit the offense, *see United States v. Muratovic*, 719 F.3d 809, 816 (7th Cir. 2013); *United States v. Snell*, 627 F.2d 186, 188 (9th Cir. 1980) (per curiam). The key question is whether "the crime will take place unless interrupted by independent circumstances." *Mincoff*, 574 F.3d at 1195 (quoting *Goetzke*, 494 F.3d at 1237).

In addition to these general factors, courts also focus on the type of crime at issue. In bank robbery cases, courts frequently consider whether the defendant approached the targeted building to commit the offense. *See Moore*, 921 F.2d at 209 (holding that a defendant took a substantial step when he walked towards a bank wearing a ski mask,

holding gloves, and carrying a concealed loaded gun, combined with an informant's details about the planned offense); *see also Rumfelt v. United States*, 445 F.2d 134, 135–37 (7th Cir. 1971) (defendant took a substantial step by standing in front of a bank while wearing a ski mask and using a rifle to intimidate a passerby into trying to open the door to the bank) (cited with approval in *United States v. Buffington*, 815 F.2d 1292, 1302 (9th Cir. 1987)).  If the defendants did not move toward the targeted bank, but merely conducted surveillance in its vicinity, defendants may not have taken a substantial step.  *See Buffington*, 815 F.2d at 1303; *see also Harper*, 33 F.3d at 1147 (holding there was no substantial step where defendants "never made a move toward the victims or the Bank to accomplish the criminal portion of their intended mission"); *United States v. Still*, 850 F.2d 607, 610 (9th Cir. 1988) (holding there was no substantial step where the facts "do not establish either actual movement toward the bank or actions that are analytically similar to such movement").

In cases involving attempted robberies of armored trucks, courts have similarly focused on whether the defendants laid in wait where the truck was expected.  *See Muratovic*, 719 F.3d at 816 (holding that the defendant took a substantial step towards robbery of an armored car where the defendant had gathered everything necessary to rob the armored car, waited for the car in a parking lot with the intention of following the car to a highway rest stop and robbing it, and failed to carry through only because he saw activities indicating that "the truck's driver had seen his surveillance"); *United States v. Chapdelaine*, 989 F.2d 28, 30–31, 33 (1st Cir. 1993) (holding that the defendant took a substantial step toward robbery of an armored car when he gathered the necessary weapons and planned the robbery; drove to a

parking lot to lay in wait for the car; but aborted the plan at the last minute when the armored car left the parking lot just as the defendant arrived).

And in cases involving planned offenses against individual victims, courts have focused on whether defendants had begun traveling to the location where the victim was expected to be found. *See United States v. Washington*, 653 F.3d 1251, 1266 (10th Cir. 2011) (holding that a defendant took a substantial step towards attempted murder-for-hire when he equipped himself with a pair of latex gloves to avoid fingerprints and traveled towards "a city in which he had no apparent business beyond the planned hit" with "the person who had facilitated the murder-for-hire agreement."); *United States v. Young*, 613 F.3d 735, 743 (8th Cir. 2010) (holding that defendant took substantial step towards enticement of a minor when he traveled to a motel where he expected to meet the victim); *United States v. Khalil*, 279 F.3d 358, 368–69 (6th Cir. 2002) (holding that a defendant took a substantial step toward committing a violent crime by participating with motorcycle club members who "organized themselves, armed themselves, and traveled in groups to locations where they expected to find their intended victims," and aborted their efforts only "due to police interference"); *see also* Model Penal Code § 5.01(2)(a) ("lying in wait, searching for or following the contemplated victim of the crime" can constitute a substantial step).

In this case, taking the evidence in the light most favorable to the government, a reasonable jury could conclude that Soto-Barraza and Sanchez-Meza took a substantial step toward robbery of marijuana smugglers because they equipped themselves with assault-style weapons (as well as packing food, water and ammunition) and traveled

to an area where they expected to find the intended victims. *See Khalil*, 279 F.3d at 368. Given that the defendants admitted that they entered the Mesquite Seep to search for marijuana smugglers and to rob them at gunpoint, and given their preparations for doing so, a reasonable jury could conclude that defendants would have carried out the crime once the opportunity presented itself and failed to do so only because they were interrupted by the BORTAC agents.

The defendants argue that there was insufficient evidence to establish they had taken a substantial step because there was no evidence that marijuana smugglers were actually present in their immediate vicinity or that a robbery was imminent. In making this argument, defendants rely primarily on cases considering whether defendants had taken a substantial step toward robbing a store or bank. *See Hernandez-Cruz*, 651 F.3d at 1102–03; *Harper*, 33 F.3d at 1147; *Still*, 850 F.2d at 610; *Buffington*, 815 F.2d at 1303. But here the defendants were targeting individual victims, not a building. In these circumstances, courts place greater weight on other factors, such as whether the defendants are lying in wait for the intended victim, *see Muratovic*, 719 F.3d at 816, or have begun traveling to the location where the victims may be found, *see Khalil*, 279 F.3d at 368. Because the central inquiry is whether the evidence is sufficient to demonstrate that the defendants will carry through with the offense unless interrupted, "there is no requirement that the actions constituting the attempt have a particular geographic proximity to the object of the substantive offense." *United States v. Turner*, 501 F.3d 59, 69 (1st Cir. 2007); *see also Villegas*, 655 F.3d at 669 (defendant took substantial step towards attempted robbery of armored car even though he was a mile away from the location of the planned robbery). Nor need a criminal act be imminent. *See Mincoff*, 574 F.3d

at 1190–91, 1195 (holding that there was a substantial step even though the attempted drug transaction took place over the phone across a ten-day period); *see also United States v. Sanchez*, 615 F.3d 836, 844 (7th Cir. 2010) (finding a substantial step made even though crime was at least a week away).

Because a reasonable jury could have concluded that Soto-Barraza and Sanchez-Meza did all they could to prepare to rob marijuana smugglers they would encounter and would have followed through with the crime had the BORTAC agents not intervened, the district court correctly denied defendants' motion for judgment of acquittal. *See Mincoff*, 574 F.3d at 1195.[8]

**AFFIRMED IN PART AND VACATED IN PART**

---

[8] As discussed in the concurrently filed memorandum disposition, ___ Fed. App'x ___ (9th Cir. 2020), we accept the government's concession that conspiracy to commit Hobbs Act robbery is not a crime of violence and thus vacate defendants' convictions on Count 9.